```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION

ERIC JONES,
on behalf of himself and
all others similarly situated,

      Plaintiff,
v.                                    Case No. 8:20-cv-2945-VMC-SPF

SCRIBE OPCO, INC.,

      Defendant.
_____/
```

**ORDER**

This matter is before the Court on consideration of Defendant Scribe Opco, Inc.'s Motion to Dismiss (Doc. # 42), filed on January 13, 2022. Plaintiff Eric Jones responded on February 14, 2022. (Doc. # 50). For the reasons that follow, the Motion is denied.

**I.   Background**

According to the amended complaint, "[t]his action seeks to recover back pay and benefits under the [Worker Adjustment and Retraining Act of 1988 ("WARN Act")] to redress a common course of conduct by [Scribe] which resulted in hundreds of employees suffering an 'employment loss,' as defined by the WARN Act, as part of a series of mass layoffs without proper legal notice." (Doc. # 30 at 2).

1

Jones worked for Scribe for over 16 years, last at Scribe's Clearwater, Florida facility. (Id. at 6). Jones alleges he "was furloughed on March 26, 2020" after Scribe sent him and many other employees a memo on March 25, 2020, stating that these employees were being "laid off." (Id.). "The March memo explained that '[a]s a result of the Coronavirus, also referred to [as] COVID-19 and its impact to our business, it is imperative we make critical business decisions to ensure the longevity and financial stability of our organization so that we may weather this storm and come back stronger.'" (Id.).

According to Jones, the "March memo fails [to] comply with the WARN Act in its form and content." (Id. at 7). "But the bigger issue is that [Scribe] owed [Jones] and the putative class members a follow-up notice once it became reasonably foreseeable the March layoff would exceed six months. Indeed, the March memo states [Scribe] hopes to call employees back 'soon,' making it sound like a short layoff, rather than a permanent layoff. There is simply nothing in the March memo that states whether the layoff will be longer (or shorter) than six months." (Id.).

"In fact, following the initial layoff [Scribe] continued to tell [Jones] and the putative class members they

would be brought back to work at [Scribe]." (Id.). "However, instead of being brought back 'soon,' they were forced to wait nearly eight months to finally hear about their 'official' terminations." (Id. at 8). "[O]n November 20, 2020, [Jones] and the putative class members were told in writing for the first time they would be terminated effective November 20, 2020." (Id. at 8).

Jones alleges that "it was the indirect and lingering effects of the economic downturn caused by the COVID-19 pandemic that resulted in [Scribe's] decision to engage in a mass layoff of [Jones] and putative class members." (Id. at 14). Thus, Jones asserts, "the plant closings and/or mass layoffs in this case were 'due to' the economic downturn [Scribe]'s manufacturing business experienced. That drop-off was 'due to' governmental mandates and private-sector choices made considering the appearance and growth of the pandemic." (Id. at 13).

Jones initiated this putative class action against Scribe on December 9, 2020. (Doc. # 1). Subsequently, after a stay of the case, Jones filed an amended complaint on December 6, 2021, asserting a claim for violation of the WARN Act. (Doc. # 30).

3

Scribe now moves to dismiss, arguing that Jones' claim is barred by the WARN Act's natural disaster exception. (Doc. # 42). Jones has responded in opposition. (Doc. # 50). The United States has filed a Statement of Interest, urging the Court to defer to the Secretary of Labor's interpretation of the natural disaster exception regarding causation. (Doc. # 49). Scribe has responded to the Statement of Interest. (Doc. # 58). Additionally, other non-party entities have filed amicus briefs. (Doc. ## 62, 63).

The Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

4

> raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, "[a] plaintiff is 'not required to negate an affirmative defense in [its] complaint.' Thus, '[g]enerally, the existence of an affirmative defense will not support a motion to dismiss.'" Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 976 (11th Cir. 2015) (citations omitted).

### III. **Analysis**

"The WARN Act was created in part to protect employees from sudden large layoffs by requiring significant employers 'to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing.'" Benson v. Enter. Leasing Co. of Orlando, LLC, No. 6:20-cv-891-RBD-LRH, 2021 WL 1078410, at *2 (M.D. Fla. Feb. 4, 2021) (quoting Sides

v. Macon Cnty. Greyhound Park Inc., 725 F.3d 1276, 1280 (11th Cir. 2013)). "A WARN Act claim has three elements: '(1) a mass layoff or plant closing as defined by the statute conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled to notice.'" Id. at *4 (quoting Sides, 725 F.3d at 1281). "Under the WARN Act, employees are entitled to a 60-day notice unless the employer can show that one of several affirmative defenses applies." Id. (citation omitted).

Scribe argues that the complaint must be dismissed with prejudice because the natural disaster exception to the WARN Act applies. That exception provides: "No notice under this chapter shall be required if the plant closing or mass layoff is **due to** any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States." 29 U.S.C. § 2102(b)(2)(B) (emphasis added). Even if an exception applies, the employer still "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." Id. § 2102(b)(3).

Scribe's argument has two parts: (1) that the COVID-19 pandemic is a natural disaster, and (2) the standard for causation under the natural disaster exception is "but-for"

6

causation, which it contends is met here. (Doc. # 42 at 7-16).

Regarding causation, Scribe argues the phrase "due to" "is regularly used interchangeably with the phrases 'but for' and 'but for cause'" and "[t]here is no question that the COVID-19 pandemic was the 'but for' cause of the layoffs at issue." (Doc. # 42 at 13-14). Scribe relies on a Southern District of Texas decision currently on appeal before the Fifth Circuit Court of Appeals, in which the district court held that "[t]he WARN Act's phrase 'due to' means but-for causation" such that the "COVID-19 pandemic need not be the direct or sole cause of the layoffs for the natural-disaster exception to apply." Easom v. US Well Servs., Inc., 527 F. Supp. 3d 898, 912-915 (S.D. Tex. 2021).

Thus, Scribe urges this Court to adopt an interpretation of the natural disaster exception's causation requirement that is less stringent than the one promulgated by the Department of Labor, the agency responsible for implementing regulations under the WARN Act. See 29 U.S.C. § 2107(a) ("The Secretary of Labor shall prescribe such regulations as may be necessary to carry out this chapter."). The relevant regulation implementing the natural disaster exception reads:

7

> The "natural disaster" exception in section 3(b)(2)(B) of WARN applies to plant closings and mass layoffs due to any form of a natural disaster.
>
> (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
>
> (2) **To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.**
>
> (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in § 639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.
>
> (4) **Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.**

20 C.F.R. § 639.9(c) (emphasis added).

Because the Court is dealing with an agency's interpretation of a statute it administers, the Court must utilize the two-step Chevron analysis. Rivas v. U.S. Att'y Gen., 765 F.3d 1324, 1328 (11th Cir. 2014) (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)); see also Sides, 725 F.3d at 1284 (applying the Chevron analysis in a WARN Act case). First, the Court must determine "whether the statute at issue is ambiguous,"

considering "whether Congress has directly spoken to the precise question at issue." Arevalo v. U.S. Att'y Gen., 872 F.3d 1184, 1188 (11th Cir. 2017) (citation and quotation marks omitted). "If the statute is unambiguous, the Court applies it according to its terms and no deference is due." Id.

Second, if the statute is silent or ambiguous regarding the particular issue presented, the Court must decide "whether the agency's interpretation is reasonable or based on a permissible construction of the statute." Id. "A reasonable interpretation is one that is rational and consistent with the statute." Id. (citation and quotation marks omitted).

Here, the statute is ambiguous as to whether the phrase "due to" imposes a "but for" or proximate cause requirement. As the United States points out, courts have previously held the phrase "due to" ambiguous in other statutes. See U.S. Postal Serv. v. Postal Regul. Comm'n, 640 F.3d 1263, 1268 (D.C. Cir. 2011) ("[T]he phrase 'due to' is ambiguous. The words do not speak clearly and unambiguously for themselves. The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other." (quoting Kimber v. Thiokol Corp., 196 F.3d 1092, 1100

9

(10th Cir. 1999))). The phrase "due to" leaves unclear the level of causation required, whether proximate causation or "but for" causation. While Scribe's interpretation of the phrase "due to" as meaning "but for" may be reasonable, it is not the only reasonable interpretation.[1] See, e.g., Crose v. Humana Ins. Co., 823 F.3d 344, 349 (5th Cir. 2016) (holding in the context of an insurance contract that "'due to' calls for a more direct causal nexus than 'but for' causation").

Thus, the Court moves on to Chevron Step 2. See Sides, 725 F.3d at 1284 ("Where there is statutory ambiguity we defer to the interpretation of the WARN Act by the agency charged with its implementation, the Department of Labor (DOL)."). The Secretary's interpretation of the natural disaster exception is reasonable and warrants deference. As interpreted by the Secretary, only employers who experience direct damage caused by a natural disaster, such as a plant being destroyed by a flood, may utilize the natural disaster exception. Thus, these directly affected employers may provide either no notice or short notice of layoffs. This

---

[1] The Court rejects Scribe's argument that the Supreme Court case regarding Title VII, Bostock v. Clayton Cty., Georgia, 140 S. Ct. 1731, 1739 (2020), requires that this Court conclude that "due to" establishes a "but for" causation standard for the WARN Act. Bostock addressed the meaning of the phrase "because of" — not "due to." Id.

makes sense because an employer cannot predict 60 days in advance that a worksite will be destroyed by a natural disaster and may not be able to provide any advance notice before a mass layoff precipitated by that destruction. In contrast, an employer suffering from indirect, downstream economic effects from a natural disaster, such as the local economy suffering after a recent flood in the area, has more time to predict that layoffs will become necessary. Thus, such an indirectly affected employer has a greater ability to provide advance notice to employees.

Importantly, the Secretary's reading of the natural disaster exception does not leave employers indirectly impacted by a natural disaster without relief. See 20 C.F.R. § 639.9(c)(4) ("Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the 'unforeseeable business circumstance' exception described in paragraph (b) of this section may be applicable."). Employers who experience indirect effects from a natural disaster may invoke the WARN Act's unforeseeable business circumstance exception. The unforeseeable business circumstance exception allows an employer to provide less than 60 days' notice of an impending layoff, but does not state that "no notice" is required like the natural disaster

11

exception does. See 29 U.S.C. § 2102(b)(2)(A) ("An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.").[2] Thus, employers only impacted by the indirect effects of a natural disaster can pursue the unforeseeable business circumstance exception, rather than the natural disaster exception.

Reading the natural disaster exception as requiring direct causation promotes the central purpose of the WARN Act — to provide employees with reasonable advance notice of impending layoffs — without preventing employers indirectly affected by natural disasters from utilizing the unforeseeable business circumstance exception. In short, the Court defers to the Secretary of Labor's determination that the natural disaster exception requires direct causation.

The amended complaint plausibly alleges that the layoffs here were not directly caused by the COVID-19 pandemic. Rather, Jones alleges "the plant closings and/or mass layoffs in this case were 'due to' the economic downturn [Scribe]'s

---

[2] Still, an employer invoking this exception must "give as much notice as is practicable." 29 U.S.C. § 2102(b)(3).

12

manufacturing business experienced," which in turn was "'due to' governmental mandates and private-sector choices made considering the appearance and growth of the pandemic." (Doc. # 30 at 13). Therefore, at the motion to dismiss stage, Scribe has not shown that the natural disaster exception applies. See Benson, 2021 WL 1078410, at *5 ("[T]he Complaint does not allege the layoffs resulted directly from the pandemic. The Complaint (and unfortunate experience) shows a more tenuous connection: COVID-19 caused global concern over the spread of the virus, leading to a global shutdown — travel stalled, as did economies. So fewer people traveled, fewer people flew — and fewer people rented cars from Enterprise in Orlando's and Tampa's airports. Enterprise experienced 'a dramatic downturn in business' and Plaintiffs were laid off." (citation omitted)).

The Motion is denied on this basis and the Court need not reach the issue of whether the COVID-19 pandemic qualifies as a natural disaster.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Scribe Opco, Inc.'s Motion to Dismiss (Doc. # 42) is **DENIED**. Defendant's answer to the amended complaint is due within fourteen days of the date of this Order.

13

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of March, 2022.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE