# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ERIC JONES, on behalf of himself and on behalf of all others similarly-situated,**

    **Plaintiff,**

v.     Case No. 20-cv-02945-VMC-SPF

**SCRIBE OPCO, INC. d/b/a BIC GRAPHIC,**[1]

    **Defendant.**

_____

## DEFENDANT'S RESPONSE TO MOTION TO CERTIFY CLASS

Defendant, Scribe Opco, Inc. d/b/a BIC Graphic ("Defendant" or "Scribe") hereby submits its response in opposition to Plaintiff Eric Jones's ("Plaintiff" or "Jones") motion to certify class.

## I. INTRODUCTION

To certify his putative class, Jones must establish all of the numerosity, commonality, typicality, and representativeness elements of Rule 23(a) and the predominance and superiority elements of Rule 23(b)(3). (ECF No. 76 at 11-12.)

---

[1] The correct name of the Defendant entity is Scribe OpCo, Inc., d/b/a Koozie Group, f/k/a Scribe OpCo, Inc. d/b/a BIC Graphic.

He cannot meet the predominance requirement of Rule 23(b)(3).[2]

Jones concedes, as he must, that "[t]he important predominance inquiry is whether 'liability can be determined on a class-wide basis, even when there are some individualized damage issues.'"  (ECF No. 76 at 21-22 (quoting *In re Visa CheckMasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)).  The problem with Jones's proposed class is that the Court cannot determine liability on a class-wide basis in one "all or nothing" trial.

This case is not a typical WARN Act case in many ways, including the fact that the case stems from Scribe's decision to institute what it intended to be temporary layoffs and furloughs, and most of those layoffs and furloughs were, in fact, less than six months in length.  (Ex. 1, DuPuis Dep. at 82:5-83:15, 84:16-85:4, 100:8-18, 129:24-130:8.)  For the minority of individuals whose layoff or furlough exceeded six months – and comprise Jones's putative class as currently defined – many of them opted to take a path different from that chosen by Jones.  In particular, the putative class proposed by Jones includes individuals who, in response to the notice of layoff, declined reinstatement by Scribe because they decided to retire or obtain other employment, and at least one individual who asked to be laid off as part of the COVID layoff.  (*E.g.*, Ex. 2, DuPuis Decl. ¶¶ 6-7.)

---

[2] Since commonality and predominance overlap and predominance is "even more demanding" than commonality, Scribe addresses only predominance in its response.  *E.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Such individuals did not suffer an employment loss, and therefore have no WARN Act claim. *E.g., Wiltz v. M/G Transp. Servs., Inc.*, 128 F.3d 957, 963, 965 (6th Cir. 1997) (employees who declined to apply for reemployment or refused offer of reemployment did not suffer employment loss under WARN Act). Since such individuals are nonetheless in the putative class, and Jones has presented no method of determining class-wide liability using common evidence, Jones has failed to meet his burden of showing predominance. *E.g., In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (holding that unless "plaintiffs [can] prove" injury "through common evidence," "individual trials are necessary to establish whether a particular [class member] suffered harm from the price-fixing scheme," defeating predominance).

Since it is Jones's burden to establish predominance, and he has failed to do so, the Court should deny class certification.

## II. FACTS

In March 2020, the COVID-19 pandemic was "an abrupt and exogenous shock" to the United States and began to impact the everyday lives of people and businesses across the country. GENE FALK, ET AL, CONG. RSCH. SERV., R46554, UNEMPLOYMENT RATES DURING THE COVID-19 PANDEMIC 2, *available at* http://fas.org/sgp/crs/misc/R46554.pdf. One need not look far for examples. For instance, on March 13, 2020 – the day the former president declared COVID-19 to

be a national emergency – the then-Chief Judge of this Court, Steven Merryday, issued an order prohibiting particular categories of people who were a risk to spread COVID-19 from entering courthouses. M.D. Fla. Admin. Order 20-MC-20-T-23. That same day, the Chief Judge of the Southern District of Florida, K. Michael Moore, issued the first of many orders designed to "reduce the possibility of exposure to the coronavirus and COVID-19 and slow the spread of the disease" by continuing all jury trials scheduled to start between March 16 and 30, 2020. S.D. Fla. Admin. Order 2020-18.

Like federal courts, states and localities across the country also took steps to contain the spread of the disease. For example, on March 17, 2020, Governor DeSantis issued an executive order limiting restaurant and beach capacity. Fla. Exec. Order 20-68.

This was a time of great uncertainty. For instance, on March 20, 2020, and again on April 3, 2020, Chief Judge Moore in the Southern District of Florida extended the moratorium on jury trials through April 27, 2020, and then through July 6, 2020, respectively. S.D. Fla. Admin. Orders 2020-21, 2020-24. On April 1, 2020 – just over two weeks after trying to contain the spread of COVID-19 through beach and restaurant capacity restrictions – Governor DeSantis issued an executive order "limit[ing]" the "movements and personal interactions" of most individuals in Florida through April 30, 2020. Fla. Exec. Order 20-91.

The uncertainty has continued to this day. Indeed, over the two years since March 2020, businesses and governments at all levels and in all American geographies have tried a myriad of drastically different approaches to address the effects of the pandemic. *See, e.g.*, VARIATION IN US STATES' COVID-19 POLICY RESPONSES, BLAVATNIK SCH. OF GOV'T, UNIVERSITY OF OXFORD, *available at* https://www.bsg.ox.ac.uk/sites/default/files/2021-05/BSG-WP-2020-034-v3.pdf.

Scribe, like many businesses across the country, was forced to take drastic steps to save the company. Accordingly, in March and April 2020, Scribe temporarily laid off or furloughed approximately 248 workers from a location in Redwing, Minnesota, 89 workers from a location in Sleepy Eye, Minnesota, 112 workers from a location at 14421 Myerlake Circle in Clearwater, Florida, 190 workers from a location at 3001 Tech Drive in Clearwater, Florida, eight workers from a location at 14433 Myerlake Circle in Clearwater, Florida, and seven remote workers. (Ex. 2, DuPuis Decl. ¶ 5.)

As Scribe noted in its layoff/furlough notices, it "hope[d] these actions w[ould] only be temporary and not last longer than necessary and that [Scribe] w[ould] be able to call employees back soon." (ECF No. 30 ¶ 25.)

As conditions improved, Scribe did, in fact, bring back hundreds of workers laid off in March and April 2020. (Ex. Ex. 2, DuPuis Decl. ¶ 6; *see also* Ex. 1, DuPuis Dep. at 82:5-83:15, 100:8-18, 129:24-130:8.) By November 2020, only

4

approximately 90 of the 310 individuals laid off in March and April 2020 from the Clearwater facilities remained on furlough. (Ex. 1, DuPuis Dep. at 82:22-83:7, 85:5-16, 90:9-23, 100:8-18; Ex. 2, DuPuis Decl. ¶ 5.) Jones was one of those individuals. (Ex. 1, DuPuis Dep. at 82:22-83:3.) The remainder had been re-hired or decided to move on from Scribe. (Ex. 1, DuPuis Dep. at 82:22-83:7, 85:5-16, 90:9-23.)

Scribe held out hope that it could bring back those approximately 90 employees at the end of 2020 because that is typically a busy season. (Ex. 1, DuPuis Dep. at 90:9-23.) Since business did not pick up as much as Scribe hoped, and Scribe wanted to pay out unused PTO in advance of the holiday season, Scribe terminated Jones and the other remaining laid off employees from Clearwater in November 2020. (*Id.*)

When Scribe told Jones in November 2020 that he was one of the approximately 90 individuals being terminated, he claimed he "was terminated because of [his] disability" and told Scribe that he had "recordings and documentation of management doing and saying things that's [sic] breaks the law." (Ex. 2, DuPuis Decl. Ex. A.) After apparently learning he had no disability claim, a WARN Act claim was filed. (ECF No. 1.)

### III.   ARGUMENT

**A. Legal Standard**

5

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013). Accordingly, courts must undertake a "rigorous analysis" to determine whether class certification is appropriate. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Comcast*, 133 S. Ct. at 1432. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

Jones bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. *Comcast*, 133 S. Ct. at 1432; *Dukes*, 131 S. Ct. at 2551. Jones must also comply with Rule 23(b)(3)'s heightened burden of showing that common questions predominate over individual ones, and that a class action is the superior method of adjudication. *Comcast*, 133 S. Ct. at 1432. "[I]f doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

As demonstrated below, Plaintiff has failed to meet this burden.

**B. Jones Has Not Established Predominance Because He Has Not Shown How He Could Establish Liability on a Class-Wide Basis**

The Court should deny class certification because Jones has failed to

establish, as he must, that class-wide liability can be established in one, all-or-nothing trial.

To meet Rule 23(a)(2)'s commonality requirement, Jones bears the burden of showing that the class's claims "depend upon a common contention" which is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims ***in one stroke***." *Dukes*, 564 U.S. at 350 (emphasis added). "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (ellipses omitted). To satisfy the "even more demanding" predominance requirement of Rule 23(b)(3), Jones must show that such common questions predominate. *Comcast*, 569 U.S. at 34.

Predominance "begins ... with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). To show common questions predominate, Jones must, as he admits, show that "'liability can be determined on a class-wide basis, even when there are some individualized damage issues.'" (ECF No. 76 at 21-22 (quoting *In re Visa CheckMasterMoney*, 280 F.3d at 139).) Put differently, Jones must "provide a common method of proof to establish [Scribe's] classwide liability." *Castillo v.*

7

*Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020); *see also id.* ("[plaintiff] has been unable to provide a common method of proving the fact of injury and any liability"); *Brown*, 817 F.3d at 1237 ("These claims do not satisfy predominance because their elements of causation require individual proof.").

The elements of Jones's WARN Act claim – which are tellingly missing from his motion for class certification – are:

(1) A plant closing or mass layoff in violation of 29 U.S.C. § 2102;

(2) A lack of timely notice to the employee; and

(3) An employment loss as a result of such closing or layoff.

29 U.S.C. § 2104(a)(1).

Jones has not pointed to any common evidence or method by which he can prove that every member of the class suffered "[a]n employment loss" as he must do to establish class-wide liability in one all-or-nothing proceeding. This is not only, as is relevant for the instant motion, a Rule 23 problem; it points to eventual Article III and Rules Enabling Act problems. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190*,* 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages. ***Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not***.") (emphasis added); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016) (using evidence that was not actually representative "would … violate[] the Rules

8

Enabling Act by giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action.").[3]

Individuals put on a temporary layoff or furlough who decide to cut ties with their employer before the expiration of six months do not suffer an employment loss within the meaning of the WARN Act. *E.g.*, *Wiltz*, 128 F.3d at 963, 965 (employees who declined to apply for re-employment or refused offer of reemployment did not suffer employment loss under WARN Act); *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1282-1283 (8th Cir. 1996) (Employees who opted for early retirement in lieu of layoff did not suffer employment loss under WARN); *Nelson v. Formed Fiber Techs., Inc.,* 856 F. Supp. 2d 235, 241 (D. Me. 2012) ("The Court finds that he resigned from his position at Formed Fiber 'before his layoff reached the six-month threshold' and therefore 'before he suffered an employment loss within the meaning of the statute.'"); *Leeper v. All. Res. Partners, L.P.*, 356 F. Supp. 3d 761, 768–69 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) ("Employees … who voluntarily decline to return to work are excluded from those who may be counted as having experienced an 'employment loss' under the WARN Act."); *Brewer v. Am. Power Source, Inc.*, 517 F. Supp. 2d 881, 888 (N.D. Miss. 2007), *aff'd*, 291 F. App'x 656 (5th Cir. 2008) (employees who "refused reemployment"

---

[3] A plaintiff needs to establish standing "at all stages of litigation … with the manner and degree of evidence required at the successive stages of the litigation," *TransUnion*, 141 S. Ct. at 2208.

9

did not suffer an employment loss under WARN); *Castro v. Chicago Housing Authority*, No. 99–CV–6910, 2003 WL 21518321, at *11 (N.D. Ill. July 1, 2003), *aff'd*, 360 F.3d 721 (7th Cir. 2004) (holding that employee who resigned less than six months after his layoff date was not entitled to relief under WARN because he had not suffered an "employment loss"); *see also Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 526-28 (7th Cir. 2011) (employees who signed severance agreements after layoff did not suffer employment loss under WARN Act). Accordingly, such individuals have no claim. *See* 29 U.S.C. § 2104(a)(1) (requiring an "employment loss" to maintain a WARN Act claim).

This is not some speculative concern. Scribe has ample evidence of members of Jones's putative class who decided to cut ties with Scribe after the March and April 2020 temporary layoffs. For instance, the record establishes that there are individuals who responded to offers from Scribe to resume work by telling Scribe that they had instead decided to retire. (Ex. 1, DuPuis Dep. at 129:24-130:20, 131:17-22; Ex. 2, DuPuis Decl. ¶ 6.) The record evidence reflects that other individuals declined reinstatement because, per these individuals, they preferred other employment. (Ex. 1, DuPuis Dep. at 129:24-130:20, 131:17-22; Ex. 2, DuPuis Decl. ¶ 6.) Scribe knows of at least one individual who asked to be added to the COVID-related layoff list. (Ex. 2, DuPuis Decl. ¶ 7.) These individuals did not suffer an employment losses. *E.g., Michigan Regional Council*

10

*of Carpenters v. Holcroft LLC*, 195 F. Supp. 2d 908, 912 (E.D. Mich. 2002) ("only layoffs *exceeding* 6 months are considered employment losses").

Of course, proof that many, most, or even almost all class members held out hope of rehire for six months – and there is no proof that anyone but Jones held out hope for six months – would not solve this problem because it leaves open whether any given individual class member actually suffered an employment loss and thus has a claim. *See Dukes*, 564 U.S. at 349-50 ("[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury").

The problem Jones faces is he has ultimately "provided no way for differentiating between injured and uninjured class members," *Baker v. State Farm Mut. Auto. Ins. Co.*, No. 4:19-CV-14 (CDL), 2021 WL 4006124, at *8 (M.D. Ga. Sept. 2, 2021), reconsideration denied, No. 4:19-CV-14 (CDL), 2021 WL 4810620 (M.D. Ga. Oct. 14, 2021), much less a method to do so that relies on "common evidence," *id*.; *Rail Freight*, 725 F.3d at 252; *Simmons v. Ford Motor Co.*, No. 18-CV-81558, 2022 WL 845127, at *20 (S.D. Fla. Mar. 21, 2022); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 175 (C.D. Cal. 2007). Put differently, Jones has not provided the Court with a method to determine class-wide liability "in one stroke." *Dukes*, 564 U.S. at 350. Because Jones has not met his burden, the Court should not certify the class. *See Baker*, 2021 WL 4006124 at *8; *Rail Freight*, 725 F.3d at 252; *Simmons*, 2022 WL

11

845127 at *20; *Allied Orthopedic Appliances*, 247 F.R.D. at 175.

This result is supported by *Fitzhenry v. ADT Corp.*, No. 14-CV-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014). In that case, plaintiff brought a putative class action alleging defendant violated the Telephone Consumer Protection Act ("TCPA") by making pre-recorded advertising calls. *Id*. at *1. Plaintiff identified 36,748 phone calls that allegedly violated the TCPA. *Id*. at *2. Defendant pointed to evidence of 26 calls made to people who had a pre-established business relationship with defendant. *Id*. at *6. Defendant also pointed out that the recording "played out over an answering machine greeting" in some unknown number of cases. *Id*. at *7. Since the TCPA did not prohibit pre-recorded calls to individuals with whom there was a pre-established business relationship and only prohibited recordings left on voicemails and with live humans, the court concluded that the class could not be certified because plaintiff had not identified any way, absent individualized inquiry, of separating out the calls which violated the TCPA from those which did not. *Id*. *See also Balthazor v. Cent. Credit Servs., Inc.*, No. 10-CV-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) (finding failure to show commonality and predominance where "[r]esolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls"); *Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 16-CV-3461, 2019 WL 7423551,

12

at *8 (M.D. Fla. Sept. 16, 2019) ("Plaintiffs do not allege any theory of generalized proof that would demonstrate that the members of any of their proposed classes did not consent to receive the Fax.").

As in *Fitzhenry*, *Bathazor*, and *Licari Fam. Chiropractic*, Jones has presented no way of identifying, absent individualized inquiry, which putative class members received notice of temporary, not permanent, layoff, and then (a) decided to retire, (b) decided to turn down employment from Scribe, (c) quit, or (d) remained on layoff for more than six months – that is, which putative class members suffered an employment loss under WARN and which did not. Accordingly, since Jones has not met his burden of showing predominance, the Court should deny certification.

## III.   CONCLUSION

Jones has failed to meet his burden of establishing predominance because he has failed to demonstrate how he could establish class-wide liability in one all-or-nothing trial. Therefore, the Court should deny Jones's motion to certify a class.

Dated:  May 23, 2022                              Respectfully Submitted,

*/s/Peter W. Zinober*
Peter W. Zinober
Florida Bar No. 121750
peter.zinober@ogletreedeakins.com
Christopher M. Cascino
Florida Bar No. 1022861
chris.cascino@ogletree.com
Eliza N. Horne

13

        Florida Bar No. 1018588
        eliza.horne@ogletreedeakins.com
        **OGLETREE, DEAKINS, NASH,**
        **SMOAK & STEWART**
        100 N. Tampa Street, Suite 3600
        Tampa, Florida 33602
        Telephone (813) 289-1247
        Fax: (813) 289-6530
        Attorneys for the Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed a true and correct copy of the foregoing using the CM/ECF filing system which will send a notice of electronic filing to all counsel of record, on this 23rd day of May, 2022.

        */s/Peter W. Zinober*
        Peter W. Zinober