# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ERIC JONES, on behalf of
himself and on behalf of all others
similarly-situated,**

    **Plaintiff,**

**v.**                         **CASE NO.: 8:20-cv-02945-VMC-SPF**

**SCRIBE OPCO, INC.
d/b/a BIC GRAPHIC,**

    **Defendant.**
_____/

## SECOND AMENDED CLASS ACTION COMPLAINT
### (JURY TRIAL DEMANDED)

Named Plaintiff, Eric Jones, pursuant to Fed.R.Civ.P. 15(a)(1)(B), files this First Amended Class Action Complaint against Defendant Scribe Opco, Inc. d/b/a Bic Graphic ("Defendant") on behalf of himself and all others similarly-situated. In sum, Defendant violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act") by causing the Named Plaintiff and the putative class members he seeks to represent to suffer an employment loss, as defined by the WARN Act, without providing sufficient advance written notice. In further support thereof, the Named Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.    This action seeks to recover back pay and benefits under the WARN Act to redress a common course of conduct by Defendant which resulted in

hundreds of employees suffering an "employment loss," as defined by the WARN Act, as part of a series of mass layoffs without proper legal notice.

2.     Defendant's mass layoffs deprived the Named Plaintiff and the Putative Class Members "...and their families [of] some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

3.     Defendant failed to provide the Named Plaintiff and the Putative Class Members with the advance written notice that is required by the WARN Act.

4.     Defendant will likely claim exemption from this requirement under the "unforeseeable business circumstance" exception of the WARN Act by citing the economic downturn related to the COVID-19 pandemic.

5.     Under that exception, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."   29 U.S.C. §  2102(b)(2)(A).

6.     However, Defendant was still mandated by the WARN Act to give the Named Plaintiff and the putative class members "give as much notice as is practicable."   It failed to do so here, giving Named Plaintiff no advance written notice of his termination whatsoever.

7.     The crucial date under the WARN Act is not the date when the company knows that a mass layoff is imminent, nor is it the date when the company

finally gets around to identifying the exact employees affected by the mass layoff. Rather, the WARN Act states plainly that the trigger date is the date when a mass layoff is "reasonably foreseeable."

8.     As soon as it is probable that a mass layoff will occur, the employer must provide notice as soon as is practicable. Here, upon information and belief, Defendant likely knew near the end of March that a mass layoff was "reasonably foreseeable."

9.     Defendant hopes to limit its exposure by limiting the class to only 93 individuals who were "terminated" from Defendant's Clearwater, Florida facilities in November of 2020.  But the "employment loss" in this case occurred as a result of a layoff that exceeded six months without proper notice, not the "official" termination date Defendant implemented in late November of 2020.

10.     Defendant acknowledges as much in its Motion to Dismiss when it writes, in part, that "[b]y November, Plaintiff had already experienced an employment loss as he had been laid off for nearly eight months...."  (Doc. 14, p. 10).

11.     The correct date of the "employment loss" in this case occurred on the original date of first mass layoffs, which occurred in March and April of 2020.

12.     According to 29 U.S.C.A. § 2102(c), in this case because the layoffs exceeded six months, the WARN Act treats the original lay off date as the "employment loss" date.

(c) Extension of layoff period. **A layoff of more than 6 months which, at its outset, was announced to be a layoff of 6 months or less, shall be treated as an employment loss** under this chapter unless —

> (1) the extension beyond 6 months is caused by business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff; and
> (2) notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required.

29 U.S.C.A. § 2102(c).  (Emphasis added).

13.    Simply put, in March/April of 2020, Defendant laid off approximately 592 employees at multiple facilities covered by the WARN Act.  Those layoffs lasted longer than six months.  No follow-up notice was given until the date of the "official" terminations.

14.    Those "mass layoffs" resulted in a reduction in which force which was not the result of a plant closing and resulted in an employment loss at the single site of employment during any 30-day period for at least 33 percent of the employee (excluding part-time employees; and at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees).

15.    The original date of the layoffs is the correct date of the "employment loss" under 29 U.S.C.A. § 2102(c), not six months later, and certainly not eight months later (in mid-November when Plaintiff and some of the class members received their official termination notice).

16.     More specifically, in Florida, from March 12, 2020, and April 16, 2020, approximately 120 people suffered an "employment loss" at the 14421 Myerlake Circle facility operated by Defendant.  During the same time, 200 people experienced an "employment loss" at the 3001 Tech Drive facility, along with 7 more people at the Bic 14433 Myerlake Circle facility.  The total number of Florida putative class members is approximately 327 individuals.

17.     Similarly, in Minnesota Defendant engaged in two separate mass layoffs at facilities covered by the WARN Act.  At Defendant's Red Wing location, 5151 Moundview Dr, Red Wing, MN 55066, approximately 175 individuals experienced an "employment loss" on March 20, 2020.  On the same day, approximately 90 more individuals experienced an "employment loss" who worked at Defendant's Sleepy Eye location, 1000 3rd Ave SW, Sleepy Eye, MN 56085.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as well as 29 U.S.C. §§ 2102, 2104(a)(5).

19.     Venue in this District is proper under 28 U.S.C. §1391(b) and (c), and Section 2104 of the WARN Act, 29 U.S.C. § 2104(a)(5).

## THE NAMED PLAINTIFF AND SUPPORTING FACTS

20.     Named Plaintiff Eric Jones worked for Defendant for over 16 years before he was abruptly terminated. He last worked for Defendant at its facility located 14421 Myerlake Circle, Clearwater, Florida, 33760.

21.     Plaintiff was furloughed on March 26, 2020, along with in excess of 100 other full-time employees of Defendant.

22.     On or about March 25, 2020, Defendant sent a memo to Plaintiff and many other former Bic employees – we expect to show that there were hundreds – that they were being "laid off." (*See* Bic Graphic, memo to "Valued Employee", March 25, 2020, Doc. 14-1, p. 6 (hereinafter "the March memo")).

23.     The March memo explained that "[a]s a result of the Coronavirus, also referred to COVID-19 and its impact to our business, it is imperative we make critical business decisions to ensure the longevity and financial stability of our organization so that we may weather this storm and come back stronger."  The memo goes on to explain that "[w]e have made the incredibly difficult decision to implement furloughs and layoffs throughout the organization.  Your executive and or People Leader has made the decision to place you on a lay-off starting today, March 26, 2020."

24.     Next, the March memo confusingly states that, "[w]hile we do not believe your placement on a lay-off constitutes an employment loss under the WARN Act, to the extent that it does apply, this letter is being provided as soon as practicable and is intended to provide you with the advance notice required by the WARN Act.  Less than 60-days' notice is being provided because of certain unforeseeable business circumstances and/or natural disaster, namely the Coronavirus."

6

25.     Finally, the March memo ends by stating, "[w]e hope these actions will only be temporary and not last longer than necessary and that we will be able to call employees back soon.  Our plan is to reinstate original seniority dates upon rehire."  Importantly, this same memo or a substantially similar memo was received by Florida employees and Minnesota employees alike (even if the layoffs were somewhat staggered in terms of timing for different locations).

26.     As a threshold matter, Bic's March memo fails comply with the WARN Act in its form and content.  *See* 20 CFR § 639.7.  For example, it failed to include "the name and address of the employment site where the plant closing or mass layoff will occur."  And it fails to include "[t]he job titles of positions to be affected and the names of the workers currently holding affected jobs."

27.     But the bigger issue is that Bic owed Plaintiff and the putative class members a follow-up notice once it became reasonably foreseeable the March layoff would exceed six months.  Indeed, the March memo states Bic hopes to call employees back "soon," making it sound like a short layoff, rather than a permanent layoff.  There is simply nothing in the March memo that states whether the layoff will be longer (or shorter) than six months.

28.     In fact, following the initial layoff Defendant continued to tell Plaintiff and the putative class members they would be brought back to work at Bic.

29.     As a result, many of the putative class members, who had been working at the same job for decades, were falsely led to believe they would be brought back to work.  So, they did not look for other jobs.  However, instead of

7

being brought back "soon," they were forced to wait nearly eight months to finally hear about their "official" terminations.  Plaintiff was devastated both emotionally and economically, as were many of the putative class members.

30.     Simply put, Defendant violated the WARN Act on its face by failing to provide a compliant WARN Act notice once it became reasonably foreseeable the March layoffs would exceed six months.  At an absolute minimum, Defendant was obligated to provide such a notice by no later September 25, 2020 (six months from the March layoff).  Providing that key notice would have ended months and months of waiting by Plaintiffs and the putative class members.

31.     But that did not happen.   Instead, nearly two months later, on November 20, 2020, Plaintiff and the putative class members were told in writing for the first time they would be terminated effective November 20, 2020.

33.     According to the sworn declaration attached to Defendant's Motion to Dismiss, following its March 26, 2020, layoff of 120 full-time employees, "…the COVID-19 pandemic not only continued, but worsened, and the Company continued to experience a decline in sales and revenue throughout the year." (*See* Francie Dupois Declaration, Doc. 14-1, p. 4 ¶ 8).

34.     Thus, the undisputed facts show that there was no reason to predict on March 26, 2020, or at any time soon thereafter, that the economic downturn at Bic would be short-lived.

35. Because the economic downturn was reasonably foreseeable, Defendant was obligated to comply with the WARN Act's notice requirements. But it failed to do so.

36. Even before the "layoff" by Bic announced on March 26, 2020, public discussion and common sense made it quite foreseeable – indeed not just foreseeable but *foreseen* – that manufacturing in the United States would fall drastically *and would stay low for months to come.* (*See*, *e.g.*, Marketwatch, "Industrial production collapsed in April, the Federal Reserve said Friday. Industrial output fell a record 11.2%, pulled down by a record drop in manufacturing. Capacity utilization slumped to a record low 64.9% from 72.7% in March. Economists polled by MarketWatch expected a 12% decline in production and capacity utilization of 63.2%.").

37. Not only that, but the evidence will show, among other things, that governmental stay-at-home orders were reasonably foreseeable before March 26, 2020.

38. Certainly, as Bic explained in its correspondence to Plaintiff and the putative class members, because the pandemic's severity only increased in the months following the March/April 2020 mass layoffs, Bic owed Plaintiff and the putative class members "as much notice as practicable under the circumstances" prior to terminating their employment. Defendant simply failed to comply with this WARN Act mandate.

39.    Instead, Defendant strung Plaintiff and the putative class members along for eight months with the false hope of returning to work.  That never happened.  Defendant violated the WARN Act.

40.    Plaintiff anticipates that Defendant will – incorrectly – rely on 29 U.S.C. § 2102(c) to try and avoid liability here. Such reliance would be wrong in this case.

41.    Indeed, the plain language of Section 2012(c) confirms that a separation from employment that *ends up* exceeding six months was a covered "employment loss" from the outset; and in doing so, the subsection creates one limited exception to that rule:

> (c) Extension of layoff period. A layoff of more than 6 months which, at its outset, was announced to be a layoff of 6 months or less, shall be treated as an employment loss under this chapter unless —
>
>> (1) the extension beyond 6 months is caused by business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff; and
>> (2) notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required.

42.    Defendant cannot avail itself of this exception, for multiple reasons.

43.    First, this layoff was <u>not</u>, "at its outset, ... announced to be a layoff of six months or less." The March memo to employees did not announce or otherwise state that the employees would return in less than six months. Section 2102(c) is not about layoffs that are initially announced to be "temporary" and of no identified duration. Congress did not choose to provide protection for those

employers who "don't know" or "haven't yet decided" – much less "don't say" – that a layoff will be less or more than six months. Thus, the protection of 29 U.S.C. § 2102(c) is categorically unavailable here.

44.     Second and independently, Defendant will not be able to prove that something happened to Defendant's business between March 26, 2020, and September 26, 2020 (six months later), much less as of November 20, 2020 (eight months later, on the date Plaintiff received his "official termination"), that was "not reasonably foreseeable" as of March 26, 2020, which caused the employment separations to last more than six months where it appeared before they would not.

45.     What happened, instead, is simply that – as any person would have thought likely – the manufacturing business did not get better for Bic during that time. It was entirely foreseeable that this would be the case. As recounted above in the statement of facts, Defendant saw this in the data; it is not that something new and unforeseen happened, but instead was merely that things (quite naturally) continued to be bad.  Indeed, things went from bad in March of 2020 to worse six months later.

46.     Defendant did not do what § 2102(b)(3) requires.  In fact, Defendant did not give notice that contained the legally required WARN Act information in March/April of 2020.  Nor did it do so for approximately eight months <u>after</u> the layoffs commenced.

47.     It is settled that an employer that does not comply with § 2102(b)(3) by giving prompt and adequate WARN Act notice as soon as practicable cannot

later – in litigation – attempt to avail itself of one of the provisions of the Act that allows for reduced notice.

48.    Defendant may claim it gave notice as soon as it realized, or as soon as it decided, that the layoffs would last more than six months. But that is <u>not</u> what the law requires or allows. There is no provision in the law that allows an employer to announce a "temporary" layoff of undisclosed and unpredicted duration – without giving WARN Act notice – and then come back with a belated notice some eight months later.

49.    Section 2012(c) allows a later notice only if the employer's initial announcement of layoffs "announced" that the layoff was "to be a layoff of 6 months or less." Defendant did not announce in March/April 2020 that there was to be a layoff of 6 months or less. Instead, the March memo ends by stating, "[w]e hope these actions will only be temporary and not last longer than necessary and that we will be able to call employees back soon.  Our plan is to reinstate original seniority dates upon rehire."  (Doc. 14-1, p. 6).

50.    Thus, Defendant made a choice: it chose not to tell employees at the outset the information required by the WARN Act. Defendant is now strictly liable to Plaintiff and the putative class members for violating their rights under the WARN Act.

52.    Defendant will also likely claim that it was exempt from giving WARN Act notice by virtue of the natural disaster exception to the WARN Act's notice requirement, found at 29 U.S.C. § 2102(b)(2)(B): "No notice under this chapter

shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States."

53.     But this argument, too, fails.  § 2102(b)(2)(B) is inapplicable.  A that a viral pandemic does not constitute a "form of natural disaster, such as a flood, earthquake, or ... drought."

54.     The "such as" clause demonstrates what "natural disaster" means in context: a change in the physical environment. As the binding regulation says at 20 C.F.R. § 639.9(c)(1), "Floods, earthquakes, droughts, storms, tidal waves or tsunamis and <u>similar effects of nature</u> are natural disasters under this provision." (Emphasis supplied).

55.     A spreading virus is not materially like a flood, earthquake, drought, storm, tidal wave or tsunami. Those things share a family resemblance that is not shared by a microscopic pathogen.

56.     But in any event, the plant closings and/or mass layoffs in this case were "due to" the economic downturn Defendant's manufacturing business experienced. That drop-off was "due to" governmental mandates and private-sector choices made considering the appearance and growth of the pandemic. All of this is too indirect to bring this case within 29 U.S.C. § 2102(b)(2)(B).

57.     The WARN Act's natural disaster exception only applies where a mass layoff or plant closure is the "direct result" of a natural disaster, which is not the

case here (even if COVID-19 constitutes a "natural disaster" which Plaintiff disputes).

58.     Rather, here it was the indirect and lingering effects of the economic downturn caused by the COVID-19 pandemic that resulted in Defendant's decision to engage in a mass layoff of the Plaintiff and putative class members.

59.     In sum, Defendant ordered massive layoffs in Florida and Minnesota, and those employees stayed out of work for more than six months. They suffered employment losses. Those who worked at facilities where the numbers were large enough to constitute "plant closings" or "mass layoffs" should have been given WARN Act notice before the fact. They were not. This, absent some defense, was a violation for which Defendant is strictly liable under the WARN Act.

## THE DEFENDANT

60.     Defendant is an employer as defined by 20 CFR § 639.3, because it employees, or employed, 100 or more employees, including part-time employees, who in the aggregate work at least 4,000 hours per week, exclusive of hours of overtime.

61.     Defendant could have but failed to evaluate the impact of COVID-19 upon its employees in the critical months and weeks leading up to the mass layoffs.

62.     Moreover, the fact that Congress recently made available to Defendant and many other businesses nationwide millions of dollars in forgivable loans through the "Paycheck Protection Program," but Defendant  still opted to instead in a mass layoff -- and do so without sufficient advance written notice to its

employees -- only further highlights the WARN Act violations committed by Defendant.

63.    Not only that, once the Named Plaintiff and the putative class members were furloughed by Defendant in late March of 2020 they were no longer being paid their salaries.

64.    Thus, while they were furloughed Defendant could have easily provided the Named Plaintiff and the hundreds of putative class with the required 60 days' advance written notice required by the WARN Act ***because they were not being paid*** while furloughed.

65.    Defendant's failure to provide its employees with sufficient advance written notice had a devastating economic impact on the Named Plaintiff and the putative class members.

66.    As a consequence, the Named Plaintiff and the putative class members are entitled under the WARN Act to recover from the Defendant  their respective compensation and benefits for 60 days, no part of which has been paid.

### PUTATIVE CLASSES DEFINED

67.    Specifically, the Named Plaintiff seeks to certify the following national class:

> **WARN Act Nationwide Class**: All persons employed by Defendant, who worked at one of Defendant's facilities in Florida or Minnesota, which employed 50 or more full-time employees, excluding part-time employees (as defined under the WARN Act) (the "Facilities"), who were laid off or furloughed without cause on their part, on or about March 25, 2020, or within thirty days of that date or thereafter as part of, or as the reasonably expected

consequence of, a mass layoff (as defined by the WARN Act) at the Facilities which lasted longer than six months, who do not timely opt-out of the class (the "Class"), ***but excluding individuals who, according to Defendant's records, declined reinstatement***.

68.     In the alternative, Plaintiff pleads a "Florida only" class defined as follows:

**Florida WARN Act Class (pled in the alternative):**
All persons employed by Defendant, who worked at one of Defendant's facilities in Florida, which employed 50 or more full-time employees, excluding part-time employees (as defined under the WARN Act) (the "Facilities"), who were laid off or furloughed without cause on their part, on or about March 25, 2020, or within thirty days of that date or thereafter as part of, or as the reasonably expected consequence of, a mass layoff (as defined by the WARN Act) at the Facilities which lasted longer than six months, who do not timely opt-out of the class (the "Class"), ***but excluding individuals who, according to Defendant's records, declined reinstatement***.

## THE WARN ACT CLAIM AND CLASS ALLEGATIONS

69.     At all relevant times, Defendant employed 100 or more employees, exclusive of part-time employees, *i.e.,* those employees who had worked fewer than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given (the "part-time employees"), and employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

70.     The "employment loss" in this case occurred on the original date of the first mass layoffs, which occurred in March and April of 2020, as to the Named

Plaintiff and the putative class members.  This "employment loss" resulted in the loss of employment for at least 50 employees, excluding part-time employees, at each of the facilities at issue.

71.     Specifically, Named Plaintiff worked 14421 Myerlake Circle, Clearwater, Florida, 33760, where approximately 100-200 people were laid off.

72.     The "employment loss" of the employment of persons who worked at these facilities, or as the reasonably foreseeable consequence of those terminations, resulted in the loss of employment for at least 33% of the facilities' respective employees, excluding part-time employees.

73.     The Named Plaintiff and the putative class members were discharged without cause on their part as the reasonably expected consequence of the terminations that occurred in March and/or April of 2020.

74.     The Named Plaintiff and the putative class members experienced an employment loss as part of, or as the reasonably expected consequence of, the mass layoffs which occurred in March and/or April of 2020.

75.     Prior to suffering the above-described loss of employment, the Named Plaintiff and the putative class members did not receive written notice at least 60 days in advance of the termination of their employment.   Nor did they receive as much notice as practicable under the circumstances.

76.     The Named Plaintiff and the putative class members constitute a class, or classes, within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

77.     Each of the putative class members is similarly-situated to the Named Plaintiff with respect to his or her rights under the WARN Act.

78.     Common questions of law and fact are applicable to the Named Plaintiff and the putative class members.

79.     The common questions of law and fact arise from and concern the following facts, among others: that all Class members enjoyed the protection of the WARN Act; that all Class members were employees of the Defendant; that the Defendant  terminated the employment of all the members of the Class without cause on their part; that the Defendant  terminated the employment of the members of the Class without giving them at least 60 days' prior written notice as required by the WARN Act; that the Defendant  failed to pay the Class members wages and to provide other employee benefits for a 60-day period following their respective terminations; and on information and belief, the issues raised by any affirmative defenses that may be asserted by the Defendant.

80.     The Named Plaintiff's claims are typical of the claims of the other members of the Class in that for each of the several acts of Defendant described above, the Named Plaintiff and the other Class members are injured parties with respect to his/her rights under the WARN Act.

81.     The Named Plaintiff will fairly and adequately protect and represent the interests of the Class.

82.     The Named Plaintiff has the time and his counsel have the resources to prosecute this action.

83.    The Named Plaintiff retained the undersigned counsel who have extensive experience litigating WARN Act claims, employee rights' claims, and other claims in Federal court.

84.    The Classes identified herein are so numerous as to render joinder of all members impracticable in that there are hundreds of members of the National Class, and also the alternatively-pled Florida class.

85.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

86.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

87.    No Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

88.    No other litigation concerning the WARN Act rights of any Class member has been commenced.

89.    Concentrating all the potential litigation concerning the WARN Act rights of the Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties, and is the most efficient means of resolving the WARN Act rights of all the Class members.

90.    On information and belief, the names of all the Class members are contained in Defendant's books and records.

91.    On information and belief, a recent residence address of each of the Class members is contained in Defendant's books and records.

92.     On information and belief, the rate of pay and the benefits that were being paid or provided by Defendant to each Class member at the time of his or her termination are contained in Defendant's books and records.

93.     Defendant  failed to pay the Named Plaintiff and the other Class members for the Defendant's violation of the WARN Act in an amount equal to the sum of or any part of the sum of (a) their respective wages, salary, commissions, bonuses and accrued pay for vacation and personal days for the work days in the 60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) their medical expenses incurred during the 60 calendar days from and after the date of his/her termination that would have been covered under the Defendant ' benefit plans had those plans remained in effect.

94.     The Named Plaintiff hereby demands a jury trial of all issues that may be so tried.

<u>**COUNT I – VIOLATION OF THE WARN ACT**</u>
<u>**(Class Claim)**</u>

95.     Defendant's above actions constitute a violation of the WARN Act.

**_WHEREFORE_**, the Named Plaintiff demands judgment as follows:

A.     In favor of the Named Plaintiff and each other Class member against the Defendant equal to the sum of: (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for 60 days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for 60 days;

and (c) medical expenses incurred during the 60 day period following their respective terminations that would have been covered and paid under the Defendant ' health insurance plans had coverage under that plan continued for such period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A).

     B.     Appointment of the Named Plaintiff as Class Representative;

     C.     Appointment of the undersigned as Class Counsel;

     D.     In favor of the Named Plaintiff for their reasonable attorneys' fees and the costs and disbursements of prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104 (a)(6).

     E.     Interest allowed by law;

     F.     Such other and further relief as this Court deems just and proper.

Dated this 2nd day of September, 2022.

Respectfully submitted,

/s/Brandon J. Hill
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
*Attorneys for Plaintiffs*

and

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com
*Co-counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 2nd day of Septmber, 2022, the foregoing was electronically filed using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**