UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC JONES,
individually and
on behalf of all others
similarly situated,

        Plaintiff,

                          Case No. 8:20-cv-2945-VMC-SPF

v.

SCRIBE OPCO, INC.,

        Defendant.
_____/

### ORDER

This matter comes before the Court pursuant to Plaintiff Eric Jones's Motion for Class Certification (Doc. # 76), filed on April 18, 2022. Defendant Scribe Opco, Inc. filed its response on May 23, 2022. (Doc. # 83). Jones replied on July 1, 2022. (Doc. # 89). The Motion is granted as set forth herein.

## I.    **Background**

Jones initiated this putative class action against Scribe — his former employer — on December 9, 2020. (Doc. # 1). Subsequently, after a stay of the case, Jones filed an amended complaint on December 6, 2021, asserting a claim for violation of the Worker Adjustment and Retraining Act of 1988 ("WARN Act"). (Doc. # 30). After his Motion for Class

1

Certification was fully briefed, Jones filed a second amended complaint asserting the same WARN Act claim but amending the class definition. (Doc. # 109).

Jones alleges he "was furloughed on March 26, 2020" after Scribe sent him and many other employees a memo on March 25, 2020, stating that they were being "laid off." (Id. at 6). "The March memo explained that '[a]s a result of the Coronavirus, also referred to [as] COVID-19 and its impact to our business, it is imperative we make critical business decisions to ensure the longevity and financial stability of our organization so that we may weather this storm and come back stronger.'" (Id.).

According to Jones, the "March memo fails [to] comply with the WARN Act in its form and content." (Id. at 7). "But the bigger issue is that [Scribe] owed [Jones] and the putative class members a follow-up notice once it became reasonably foreseeable the March layoff would exceed six months. Indeed, the March memo states [Scribe] hopes to call employees back 'soon,' making it sound like a short layoff, rather than a permanent layoff. There is simply nothing in the March memo that states whether the layoff will be longer (or shorter) than six months." (Id.).

"In fact, following the initial layoff [Scribe] continued to tell [Jones] and the putative class members they would be brought back to work at [Scribe]." (Id.). "However, instead of being brought back 'soon,' they were forced to wait nearly eight months to finally hear about their 'official' terminations." (Id. at 7-8). "[O]n November 20, 2020, [Jones] and the putative class members were told in writing for the first time they would be terminated effective November 20, 2020." (Id. at 8).

Jones now seeks to certify a nationwide class. (Doc. # 76). Specifically, in his Motion, Jones sought to certify the following nationwide class:

> WARN Act Nationwide Class: All persons employed by Defendant, who worked at [one] of Defendant's facilities in Florida or Minnesota, which employed 50 or more fulltime employees, excluding part-time employees (as defined under the WARN Act) (the "Facilities"), who were laid off or furloughed without cause on their part, on or about March 25, 2020, or within thirty days of that date or thereafter as part of, or as the reasonably expected consequence of, a mass layoff (as defined by the WARN Act) at the Facilities which lasted longer than six months, who do not timely opt-out of the class (the "Class").

(Id. at 1).

Scribe has responded (Doc. # 83), challenging only the predominance factor. Jones replied (Doc. # 89), proposing an amended nationwide class definition to clarify his intention

3

to exclude employees who declined reinstatement in the class and, thus, only include employees who suffered an employment loss. With the Court's leave, Jones then filed the operative second amended complaint, which includes the amended class definition. (Doc. # 109). The relevant class definition is as follows, with the added language bolded:

> **<u>WARN Act Nationwide Class</u>**:
>
> All persons employed by Defendant, who worked at one of Defendant's facilities in Florida or Minnesota, which employed 50 or more full-time employees, excluding part-time employees (as defined under the WARN Act) (the "Facilities"), who were laid off or furloughed without cause on their part, on or about March 25, 2020, or within thirty days of that date or thereafter as part of, or as the reasonably expected consequence of, a mass layoff (as defined by the WARN Act) at the Facilities which lasted longer than six months, who do not timely opt-out of the class (the "Class"), **but excluding individuals who, according to Defendant's records, declined reinstatement.**

(<u>Id.</u> at 15-16).

After the second amended complaint was filed, Scribe filed a supplemental memorandum in light of the amended class definition (Doc. # 110), to which Jones responded. (Doc. # 111). The Motion is ripe for review.

## II.  <u>Legal Standard</u>

To certify a class action, the moving party must satisfy a number of prerequisites. First, the named plaintiff must

demonstrate standing, <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1265 (11th Cir. 2009), which Jones has done and Scribe has not challenged as to Jones. Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a):

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). <u>Vega</u>, 564 F.3d at 1265. Relevant to this case, Rule 23(b)(3) permits certification of a class where (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these common questions. <u>Id.</u> A party moving for certification of a Rule 23(b)(3) class in this Court also faces the added hurdle of proposing a cost-effective means of

providing notice to putative class members. M.D. Fla. R. 4.04(b).

The party moving to certify any class or subclass ultimately bears the burden of proving that all prerequisites are met. See Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233-34 (11th Cir. 2016).

## III. **Analysis**

### A. **Ascertainability of Class**

"Ascertainability is an implied prerequisite of Rule 23." Cherry v. Dometic Corp., 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." Id. (citation omitted).

The Eleventh Circuit has "collapsed class definition and ascertainability into one inquiry. A class is inadequately defined if it is defined through vague or subjective criteria. And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." Id. (citations omitted). However, "[b]ecause

administrative feasibility has no connection to Rule 23(a), it is not part of the ascertainability inquiry." Id. at 1303.

Again, Scribe failed to challenge ascertainability in its response to the Motion. (Doc. # 83). Rather, it chose to challenge only the predominance factor. (Id.). After the Court permitted Jones to amend the class definition to address predominance issues, the Court "allow[ed] [Scribe] the opportunity to brief the predominance issue it raised in its response to the motion to certify class [] in light of the amended class definition's narrowing of the class." (Doc. # 107). Thus, the Court only permitted Scribe to further challenge the predominance factor — the only Rule 23 factor it took issue with in the first place — considering the amendment.

Yet, despite the limitation placed on the supplemental briefing, Scribe now argues for the first time in its supplemental brief that Jones's proposed class suffers from ascertainability problems. (Doc. # 110 at 2-3, 5). It now argues that Jones, "by asserting without citing any evidence that all the necessary identifying information is in the Smart Sheet, has utterly failed to meet his burden of showing ascertainability." (Id. at 6).

Notably, despite Scribe's assertion otherwise, this ascertainability argument applied equally to the class as previously defined in the Motion. That is, Scribe's argument that the Smartsheet, which records the employment status and other details of relevant employees, is insufficient to identify class members could have been raised regarding the class definition in Jones's Motion. Indeed, Jones relied on the same Smartsheet to establish ascertainability in its Motion. (Doc. # 76 at 4, 12-13).

Thus, Scribe should not have raised this previously available ascertainability argument in its supplemental brief. The Court is disappointed by Scribe's attempt to circumvent the Court's order on the scope of briefing. Scribe waived the ascertainability argument it now seeks to present by utterly failing to address ascertainability in its response to the Motion.

Even considered on the merits, Scribe's argument fails. The Court agrees with Jones that the class is ascertainable, both as stated in the Motion and revised in the second amended complaint. As Jones notes, the Smartsheet has all "the information necessary to identify those who fit the Class definition, including as to which facility they worked at." (Doc. # 76 at 4). And Jones backs this up with evidence. In

her deposition, Scribe's corporate representative, Francine Dupuis, testified that "[e]veryone that was laid off, furloughed, or given salary reduction is on that Smartsheet." (Doc. # 78 at 82:1-2). She also testified that the identities of employees who were laid off and who "were not brought back" to work were "ascertainable" "in a Smartsheet." (Id. at 110:4-17); see also (Id. at 112:14-18; 120:17-121:23). She further indicated that the Smartsheet would reveal which laid off employees were returned to work. (Id. at 82:22-83:3).

Likewise, in its supplemental brief, Jones points to the deposition of Scribe's CEO, David Klatt. Klatt testified that data about which laid off or furloughed employees were returned to work or declined reinstatement would be on the Smartsheet. See (Doc. # 111-1 at 63:23-64:5) ("I would guess. Yeah.  I mean, if somebody were to be on the Smartsheet and they were laid off or furloughed, yes, you would -- laid off, you would then make a note in there. I'm going to guess that, yes, they would be noted on there that they don't want to come back, they took a job with the Pharmacy company as noted here, or they went back to Pensacola to be with their family, so that we don't call them again.").

Whether the class meets the requirements of Rule 23 is a separate question, to which the Court now turns.

### B.   Rule 23(a) Requirements

The putative class must meet all four requirements outlined in Rule 23(a): "numerosity, commonality, typicality, and adequacy of representation." Vega, 564 F.3d at 1265 (quoting Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003)). Although Scribe does not challenge any of these requirements (instead challenging only the Rule 23(b) predominance requirement), the Court will address each in turn. See Piron v. Gen. Dynamics Info. Tech., Inc., No. 3:19CV709, 2022 WL 363958, at *5 (E.D. Va. Feb. 7, 2022) ("A review of the record discloses that the proposed class meets each of these [Rule 23(a)] elements. Defendants do not appear to suggest otherwise. Nonetheless, it is appropriate to confirm that to be the case.").

### 1.   Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013); see Vega v. T-Mobile USA, Inc., 564 F.3d

10

1256, 1267 (11th Cir. 2009); Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983)(explaining that the class representative is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Manno, 289 F.R.D. at 684 (quoting Vega, 564 F.3d at 1267).

Jones argues that the numerosity requirement is met because "the nationwide putative class [he] seeks to have certified is likely comprised of more than 300 persons." (Doc. # 76 at 12). In its answers to Jones' interrogatories, Scribe acknowledges that the nationwide putative class, as it was similarly defined in the amended complaint, consisted of 344 individuals. (Doc. # 76-7 at 10-11). Additionally, in her deposition, Scribe's corporate representative, Francine Dupuis, testified that somewhere between "90 and 500" of the furloughed or laid off employees never returned to work for Scribe. (Doc. # 78 at 83:16-22, 108:2-4).

Jones has satisfied the numerosity requirement. The Eleventh Circuit has indicated that having more than forty class members is generally enough to satisfy the numerosity

requirement. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) ("[T]he trial court's decertification of the 47-member class for lack of numerosity was by no means compelled by Rule 23 or the case law. As the trial judge who originally certified the class pointed out, citing 3B Moore's Federal Practice ¶ 23.05[1] at n. 7 (1978), while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'"). And, again, the Court notes that Scribe does not argue that the numerosity requirement is unmet.

### 2. **Commonality**

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. Piazza v. Ebsco Indus. Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Commonality "does not require complete identity of legal claims." Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532

12

(5th Cir. 1978).[1] In fact, commonality can be satisfied even with some factual variations among class members. <u>Armstead v. Pingree</u>, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

In <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011), the Supreme Court clarified the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court focused the required discussion as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

<u>Id.</u> at 350 (internal citation omitted)(emphasis in original). The Court explained that the "common contention" underpinning a finding of Rule 23(a)(2) "must be of such a nature that it is capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue

---

[1] The Eleventh Circuit, in an en banc decision, <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

that is central to the validity of each one of the claims in one stroke." Id.

Jones contends that the commonality requirement is met because "[t]he WARN Act issues central to this case — the timing of the layoffs, the required length of the notice period, and how much notice was practicable — all have common answers." (Doc. # 76 at 13). "Scribe engaged in a mass layoff as defined by the WARN Act, during the same time period and in the same manner, at each of the Covered Facilities." (Id. at 14). Scribe sent layoff letters to many class members or made phone calls regarding the layoff to other class members, particularly those in Minnesota. (Id.). Eight months later, the Florida class members received a termination letter from Scribe. (Id.). Likewise, some potential class members in Minnesota also received termination letters. (Id.).

Additionally, Scribe's primary affirmative defenses — the "natural disaster" and "unforeseeable business circumstances" defenses under the WARN Act — will have a common answer for all putative class members. See Etzelsberger v. Fisker Auto., Inc., 300 F.R.D. 378, 383 (C.D. Cal. 2013) (finding commonality requirement met in WARN Act case where defendant "asserted a number of affirmative defenses that present questions of fact and law common to all

class members," including the unforeseeable business circumstances defense).

The Court agrees with Jones regarding the class defined in the second amended complaint. "In this case, the putative class satisfies the commonality requirement, which is related to, but far less demanding than, the predominance requirement of Fed. R. Civ. P. 23(b)." <u>Piron</u>, 2022 WL 363958, at *6. Scribe engaged "in a standardized course of conduct that affect[ed] all class members." <u>In re Terazoin Hydrochloride</u>, 220 F.R.D. 672, 686-87 (S. D. Fla. 2004). Although the determination of each class member's damages will be individualized based on each's rate of pay, all class members' claims involve many of the same legal questions and answers.

### 3.   <u>Typicality</u>

The focus of Rule 23(a)(3) typicality is whether the class representative's interests are so aligned with the proposed class that he may stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. <u>See</u> <u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314, 1322–23 (11th Cir. 2008) ("[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.").

To establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). When the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." Id.

Here, Jones is a typical representative of the proposed class. There is nothing in the record to suggest that his claim is different in any way from the proposed class members' claims. As Jones explains, "the legal theory underlying the claims of the putative class members is identical to [his]

16

claim." (Doc. # 76 at 18); see also Benson v. Enter. Leasing Co. of Orlando, LLC, No. 6:20-cv-891-RBD-LRH, 2021 WL 2138781, at *6 (M.D. Fla. May 11, 2021) (holding that plaintiff in a WARN Act case had "shown her claims are typical of the other class members").

### 4.  Adequacy

The adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representative[] and the class, and (2) whether the representative[] will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Sec. Litig., 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." Id. Rather, "the conflict must be a fundamental one going to the specific issues in controversy." Id.

The Court agrees with Jones that he would provide adequate representation for the class. First, Jones "has no conflicts with or antagonistic to the" class. (Doc. # 76 at 19). Second, as he suffered from the same alleged violation of the WARN Act, Jones's "interests are directly aligned with the" class members and he has hired experienced counsel to represent his — and the class's — interests. (Id. at 20).

C.     **Rule 23(b)**

In addition to the requirements of Rule 23(a), the class must satisfy at least one of the three requirements of Rule 23(b). Jones relies on Rule 23(b)(3), which requires a finding that (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these common questions. <u>Vega</u>, 564 F.3d at 1265. Again, Scribe only challenges the predominance factor. (Doc. # 83 at 2; Doc. # 110).

1.     **Predominance**

"Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement." <u>Sellers v. Rushmore Loan Mgmt. Servs., LLC</u>, 941 F.3d 1031, 1039 (11th Cir. 2019). "Rule 23(b)(3) requires us to consider whether 'the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" <u>Id.</u> at 1040 (quoting <u>Kerr v. City of West Palm Beach</u>, 875 F.2d 1546, 1557-58 (11th Cir. 1989)).

"To determine whether common issues predominate, a district court first must 'identify the parties' claims and defenses and their elements' and 'then classify these issues

18

as common questions or individual questions by predicting how the parties will prove them at trial.'" Id. (quoting Brown, 817 F.3d at 1234). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." Brown, 817 F.3d at 1234 (internal quotation marks omitted). The Court then must "determine whether the common questions predominate over the individual ones." Id. at 1234-35.

The Eleventh Circuit has "explained that certification is inappropriate when after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims." Sellers, 941 F.3d at 1040 (citation and internal quotation marks omitted). "But this exercise is not 'bean counting' — the relative importance of the questions matters too." Benson, 2021 WL 2138781, at *8 (citing Brown, 817 F.3d at 1235). Importantly, Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013) (citation omitted).

Jones asserts a single WARN Act claim on behalf of himself and others similarly situated. (Doc. # 109). "A valid WARN Act claim requires the presence of the following three elements: '(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled [to] notice.'" Sides v. Macon Cnty. Greyhound Park, Inc., 725 F.3d 1276, 1281 (11th Cir. 2013) (citation omitted); see also Benson, 2021 WL 2138781, at *8 ("A WARN Act plaintiff must show: (1) an employer ordered; (2) a mass layoff or plant closing; (3) with less than sixty days' notice." (citations omitted)).

Jones is correct that common issues prevail over the individual issues in this case. As Jones notes, "[l]itigation of this case will focus primarily on whether Scribe provided sufficient notice to terminated employees, and whether Scribe's unforeseeable business circumstances and natural disaster defenses excuse Scribe from liability" — common questions for the class. (Doc. # 76 at 23). Notably, Scribe does not dispute that its status as the employer of the class members, the mass layoffs or plant closings, or the timeliness of notice are common questions under the WARN Act. (Doc. # 83 at 8); see also Cashman v. Dolce Int'l/Hartford, Inc., 225 F.R.D. 73, 95 (D. Conn. 2004) ("Establishing WARN Act

liability turns on fairly straightforward issues common to the entire class, including: whether Defendants are 'employer[s]' under the Act; whether a 'mass layoff' or 'plant closing' took place on or about December 30, 2003; and, if so, whether Defendants gave the proper notice required by the Act."). Scribe's primary defenses in this action — the natural disaster and unforeseeable business circumstances exceptions — are also common issues for all class members. See Id. (finding that predominance factor was satisfied in part because "Defendants may also seek to establish defenses common to the entire class," including the "good faith" and "reasonable grounds" defenses).

Indeed, the Court is mindful that "[t]he WARN Act contemplates enforcement by class action." Butler-Jones v. Sterling Casino Lines, L.P., No. 6:08-cv-1186-MSS-DAB, 2008 WL 5274384, at *3 (M.D. Fla. Dec. 18, 2008); see also Finnan v. L.F. Rothschild & Co., 726 F. Supp. 460, 465 (S.D.N.Y. 1989) ("The WARN Act seems particularly amenable to class litigation. By its terms, WARN is applicable only in the context of employer action which affects a large number of employees.").

In its response to the Motion, Scribe pointed out that some "individuals [] responded to offers from Scribe to resume

work by telling Scribe that they had instead decided to retire" or "declined reinstatement because, per these individuals, they preferred other employment." (Doc. # 83 at 11; Doc. # 83-2 DuPuis Decl. ¶ 6). Scribe argued that "[i]ndividuals put on a temporary layoff or furlough who decide to cut ties with their employer before the expiration of six months [did] not suffer an employment loss within the meaning of the WARN Act" but were still included in the class definition from the Motion. (Doc. # 83 at 10); see also 29 U.S.C. § 2101(a)(6) (defining employment loss as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period").

True, the WARN Act does provide that an employer "who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee **who suffers an employment loss**." 29 U.S.C. § 2104(a)(1) (emphasis added). Now, in its supplemental brief filed after the class definition was amended in the second amended complaint, Scribe maintains that the "putative class still includes people who suffered no employment loss and therefore have no WARN Act claim" because it "still includes individuals

who resigned or retired before they were offered re-instatement" or who "did not respond to Scribe's requests to return to work." (Doc. # 110 at 2). According to Scribe, these individuals have suffered no employment loss.

This argument does not preclude class certification. The important date for determining whether an employee suffered an employment loss is the six-month mark of the layoff. See Nelson v. Formed Fiber Techs., Inc., 856 F. Supp. 2d 235, 241 (D. Me. 2012) ("Under the plain language of the WARN Act, a layoff exceeding six months constitutes an employment loss."). Thus, for the class definition to cover only employees with standing (those who suffered an employment loss), the definition must be limited to only those who were laid off for longer than six months and must exclude those who "cut ties with Scribe before the expiration of six months." (Doc. # 110 at 2).

Such is the case with the amended class definition in the second amended complaint. The class definition includes employees who suffered "a mass layoff . . . which lasted longer than six months." (Doc. # 109 at 16). The Court interprets this language as applying a minimum requirement on the length of layoff each potential class member *individually* suffered. That is, for an individual to fit within the class

definition, he must have personally been laid off from Scribe for longer than six months. An individual whose layoff lasted less than six months would not fall within the class definition, even though the Scribe mass layoff lasted longer than six months for other employees. This reading is bolstered by other language in the second amended complaint: Jones alleges that he seeks to represent a putative class of Scribe employees who "suffer[ed] an employment loss" and explains that the employment loss "occurred as a result of a layoff that exceeded six months." (Doc. # 109 at 1, 3).

As such, the class definition does not include individuals who resigned or retired *before* the sixth month of the layoff, as they would not have been laid off for over six months. Nor does it include individuals "who did not respond to Scribe's requests to return to work" — thereby declining to return to work — *before* the sixth-month mark. Because the class definition only includes employees who were laid off for longer than six months, it inherently does not include employees who chose to resign or retire before the layoff exceeded six months and became an employment loss.

In short, the amended class definition only includes individuals who suffered an employment loss under the WARN Act and presents no issues regarding standing. See Applegate

24

v. Formed Fiber Techs., LLC, No. 2:10-CV-00473-GZS, 2012 WL
3065542, at *8 (D. Me. July 27, 2012) ("Formed Fiber's first
predominance objection — that the class includes individuals
who lack standing because they left Formed Fiber less than
six months after being laid off — has already been addressed.
Applegate's proposed class will not include such
individuals."). Also, determination of whether each employee
suffered an employment loss such that they are a member of
the class, while individualized, is a relatively
straightforward inquiry. See Geelan v. Mark Travel, Inc., No.
CV 03-6322(DSD/JSM), 2005 WL 8164834, at *7 (D. Minn. May 16,
2005) (rejecting a similar predominance argument regarding
employment loss under the WARN Act because "the
individualized issue of whether each employee was rehired
within six months is a relatively easy fact question, applied
equally to all putative class members, and does not
predominate over common issues").

Furthermore, if it believes that any former employee
sent class notice fails to meet the class definition regarding
employment loss, Scribe may later contest that employee's
class-membership status. See also Day v. Celadon Trucking
Servs., Inc., 827 F.3d 817, 834 (8th Cir. 2016) ("Celadon
further argues that certification is inappropriate based on

evidence that it presented that certain members of the class did not meet the class definition. The failure of some plaintiffs to meet the class definition does not, by itself, require decertification of an entire class. Instead, Celadon's recourse was to contest individuals' class-membership status, just as it did before the district court. To the extent Celadon argues that its liability varies from member to member, we disagree. Once again, Celadon is liable to all employees that suffered an 'employment loss.' We do not dispute that each member must make some threshold showing of employment, but the showing is straightforward and minimal given § 2101(b)(1)'s presumption of employment.").

Despite the existence of certain individualized questions for class members, such as the amount of damages, the common questions underlying the elements of the WARN Act claim and Scribe's affirmative defenses still predominate. See Applegate, 2012 WL 3065542, at *9 ("Despite the fact that potential plaintiffs may have been laid off at different times and some may have been recalled temporarily, the case involves a common, overarching question — were the plaintiffs subjected to a mass layoff without adequate notice? — and the affirmative defenses cited by Formed Fiber apply equally to each potential plaintiff.").

Thus, Jones has satisfied the predominance requirement.

## 2. <u>Superiority</u>

Additionally, a class action is a superior method of resolving the common issues. "The focus of [the superiority] analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" <u>Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.</u>, 601 F.3d 1159, 1183–84 (11th Cir. 2010).

The Court agrees with Jones that numerous factors weigh in favor of a superiority finding: (1) "[e]ach individual claim is not large in terms of dollars"; (2) to the best of Jones's and the Court's knowledge, "no individual WARN Act lawsuits have been filed against Scribe"; (3) "maintaining this action in this Court is appropriate" because Scribe's headquarters is in this district, the Florida mass layoff occurred here, and Jones worked for Scribe and lives in this district. (Doc. # 76 at 24).

Resolving the common liability question in a class action is superior to having the dozens of potential class members file separate WARN Act lawsuits against Scribe. <u>See</u> <u>Benson</u>, 2021 WL 2138781, at *10 ("As the potential individual economic payout is small (less than $6,000, on average) and

there is no indication any other plaintiff has begun an individual action against any Enterprise organization on these WARN Act claims, Benson has shown a class action is the superior method of adjudicating these claims.").

IV.  **Conclusion**

In short, Jones has satisfied all of Rule 23's requirements and the Court will certify the nationwide class as defined in the reply to the Motion. (Doc. # 89 at 2).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Eric Jones's Motion for Class Certification (Doc. # 76) is **GRANTED** as to the nationwide class definition included in Jones's second amended complaint. (Doc. # 109).

(2)  Plaintiff Eric Jones is appointed as lead plaintiff and class representative.

(3)  Brandon J. Hill, Esq. and Luis A. Cabassa, Esq. of Wenzel Fenton Cabassa, P.A. are appointed as co-lead class counsel.

(4)  Within 14 days from the date of this Order, the parties shall file a joint notice that (1) describes the identification of class members and their contact information; (2) describes the method of disseminating

28

class notice; and (3) proposes a notice to be disseminated to the class.

(5) Prior to filing the joint notice, the parties are directed to meet and confer and agree to the extent possible on these issues. To the extent the parties cannot agree, their disagreement should be described, along with short legal briefing, in the joint notice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of October, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE