# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ERIC JONES, on behalf
of himself and all others
similarly-situated,**

    Plaintiff,

v.                                CASE NO.: 8:20-cv-2945-T-33SPF

**SCRIBE OPCO, INC.,
d/b/a BIC GRAPHIC,**

    Defendant.
_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

The Class Representative, Eric Jones ("Plaintiff"), in accordance with Fed.R.Civ.P. 23, files this Unopposed Motion seeking Final Approval of the Parties' Class Action Settlement. In further support thereof, Plaintiff respectfully submits the following:

### *Brief Summary*

On November 18, 2022, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under the Worker Adjustment and Retraining Notification Act ("WARN Act"). (*See* Doc. 119). After preliminary approval was granted, notice was mailed to class members in accordance with the Court's Preliminary Approval Order. The reaction has been overwhelmingly positive. In fact, zero objections have been

made by class members and only one class member opted out. As a result, Plaintiff respectfully asks that this Honorable Court grant final approval of the Parties' class action settlement.

In terms of specifics, if approved by the Court, the settlement provides for immediate relief to approximately 212 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $350,000 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $1,635 per Settlement Class Member, with a net amount of about $985 per Settlement Class Member,[1] an amount consistent with (if not better than) similar WARN Act class action settlements approved by federal courts, including here in the Middle District of Florida.[2] Not only that—no settlement funds revert to Defendant.

In sum, little has changed since the Court's Order granting the Plaintiff's Motions for preliminary approval of the same settlement, confirming that the

---

[1] $350,000 – $116,666.66 (attorneys' fees) – $11,000 (settlement administration costs) - $7,835.91 (WFC litigation costs) - $5,000 (general release payment) - $615.35 (Justice firm litigation costs) = $208,882.08 / 212 class members= $985.29 net payments to class members.

[2] *See, e.g., Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891 (Sept. 20, 2022, Doc. 149) (approving class action settlement where WARN Act class members received $734.58); *Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments)

settlement is fair, reasonable, adequate, and warrants final approval. After notice of the Settlement terms, the Settlement Class Members showed widespread support for that Agreement and nobody has objected to its terms. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support of this Motion, Plaintiff respectfully submits the following:

I. **BACKGROUND ON THE LITIGATION.**

   A. **The Claims and Case Background.**

The original complaint in this lawsuit was filed on December 9, 2020. Plaintiff's Complaint alleged that Defendant violated the WARN Act by terminating the Named Plaintiff with no advance notice in violation of the WARN Act. Defendant has, at all relevant times, denied Plaintiff's allegations and affirmatively asserted its compliance with the law.

Soon after the lawsuit was filed, Defendant asked if Plaintiff would agree to ask the Court to stay this case pending resolution by the Eleventh Circuit of another WARN Act case, *Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891, 11th Cir. Case No. 21-11911. Plaintiff agreed and on February 24, 2021, the Court granted a Joint Motion to Stay (Doc. 17) pending resolution by the Eleventh Circuit of an interlocutory appeal filed in the *Benson* case. The Court Ordered stay lasted from February 24, 2021, through December 6, 2021. (Doc. 18).

Following the completion of: (i) extensive discovery during which nearly 9,000 pages of documents were exchanged, and half a dozen depositions

3

completed; (ii) briefing on a potentially dispositive Motion to Dismiss filed by the Defendant that was denied, a Motion for Reconsideration filed by Defendant that was denied, and a petition for interlocutory appeal that was dismissed by the Eleventh Circuit (*see* Docs. 42, 50, 69); (iii) briefing on Plaintiff's Motion for Class Certification (granted by the Court, *see* Docs. 76, 83, 114); (iv) and an arms-length mediation before third party mediator, Carlos Burruezo, during which both sides were represented by experienced class counsel, the Parties reached a resolution to this action.

### B. **Defendant's Defenses**.

Had mediation been unsuccessful, Defendant had available to it a myriad of defenses to Plaintiff's allegations, including defenses to the merits of the case and defenses to damages. Defendant claimed exemption from this requirement under the "unforeseeable business circumstance" exception of the WARN Act by citing the economic downturn related to the COVID-19 pandemic. Defendant also asserted it had no obligation to provide notice under the WARN Act's "natural disaster exception", among other affirmative defenses raised by Defendant. Defendant also asserted that it had no liability under the WARN Act regardless of the applicability of its affirmative defenses.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the action, denies that the claims asserted by Named Plaintiff

are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## II. **THE PROPOSED SETTLEMENT.**

### A. **The Proposed Settlement Class.**

The Settlement Agreement defines the proposed Settlement Class as follows:

> All persons employed by Defendant, who worked at one of Defendant's facilities in Florida or Minnesota, which employed 50 or more full-time employees, excluding part-time employees (as defined under the WARN Act) (the "Facilities"), who were laid off or furloughed without cause on their part, on or about March 25, 2020, or within thirty days of that date or thereafter as part of, or as the reasonably expected consequence of, a mass layoff (as defined by the WARN Act) at the Facilities which lasted longer than six months, who do not timely opt-out of the class (the "Class"), but excluding individuals who, according to Defendant's records, declined reinstatement.

According to Defendant's records, the class is comprised of approximately 212 people. Importantly, these are the same individuals from the class previously certified by the Court at Doc. 113. Thus, no class members will be left out.

### B. **Benefits to the Settlement Class.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $350,000 to a settlement fund ("Settlement Fund"). Each Class

5

Member is entitled to a gross pro-rata portion of the Settlement Fund totaling $1,635. After deducting the estimated attorneys' fees and litigation costs, the cost for settlement administration, and a general release payment to the Named Plaintiff, each of the Settlement Class Members is entitled to receive a net payment of approximately $985. All Class Members will automatically receive a check without having to take any action whatsoever, making this a "claims paid" settlement. Importantly, no funds will revert to Defendant. Any remaining funds will be paid to *cy pres* recipient Bay Area Legal Services, subject to Court approval.

The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Named Plaintiff also requests Court approval of $5,000 as a general release payment, which is separate from the release of his claim as a Settlement Class Member. Neither settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees being approved, nor the general release payment being approved.

### C.      Class Action Fairness Act Notice.

The Settlement Administrator caused notice of the proposed settlement to be served upon the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), in substantially the form of the CAFA notices attached as Exhibit E to the Settlement Agreement.

D.   **The Court's Order granting Preliminary Approval of the Settlement.**

On November 18, 2022, the Court entered its Order granting preliminary approval of the Parties' class action settlement. (*See* Doc. 119). In that Order, the Court determined that the Parties' settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 3, ¶ 10). Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the Settlement Class Members.

E.   **Notice And Administration.**

The Parties utilized a private, Court-approved third-party vendor, American Legal Claim Services, LLC ("ALC") to notify the Settlement Class of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Settlement Class and administering the settlement would be paid from the Settlement Fund.

On December 16, 2022, the Settlement Administrator mailed the Court approved Class Notice and Claim Form by first class-regular U.S. Mail to all class members. (Declaration of American Legal Claims employee, Noah Fiori, ¶¶ 4-5). The Settlement Administrator made extensive efforts to ensure notice reached the maximum number of class members possible, including multiple re-mailings after address searches. (Declaration of Noah Fiori, ¶¶ 4-6).

The Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their

right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Class Notices also directed recipients to the settlement website which contained additional information about the Settlement and provided a toll-free number that provided additional information. These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### F.  Class Members Overwhelmingly Support the Settlement.

Members of the Settlement Class support the Settlement. Thus far, there are zero objections by class members, and only one request for exclusion. (Declaration of Noah Fiori, ¶¶ 9-10). The complete absence of any objections reflects an overwhelmingly positive reaction to the Settlement by the class members.

## III.  MEMORANDUM OF LAW.

### A.  Legal Standard for Final Approval.

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair,

8

adequate and reasonable." *See id.* at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute their own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In addition, effective December 1, 2018, Rule 23 itself was amended to include certain final approval criteria for courts to consider, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and, finally, (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous

9

*Bennett* factors, unquestionably demonstrate that the Parties' proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

### B. The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (Doc. 131).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to re-visit the Court's prior ruling on these issues.  Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### C. Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e), Courts typically first analyze the notice to the class. *See* Fed.R.Civ.P. 23(e)(1).  As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."  An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator, ALCS, exceeded these requirements by sending out the Court-approved short form version of the notice to all class

members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information previously approved by the Court. Thus, notice was sufficient. *See also Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *4 (M.D. Fla. Oct. 22, 2019).

### D. Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).

Next, as set forth above, under Rule 23(e)(2), Courts address whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

#### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that the Class Representative, Eric Jones, and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives have adequately prosecuted the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D.

11

Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Eric Jones, is adequate given that his interests are equivalent to those of the Settlement Class. He has been actively involved in this case. He participated in the drafting and reviewing of pleadings. He responded to written discovery requests from Defendant and sat for a deposition. Additionally, he participated in the settlement of this case by attending mediation. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his counsel, secured a six-figure settlement from a sophisticated and well-represented Defendant in favor of the Class Members he represents.

The Court has appointed as Class Counsel Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek from Wenzel Fenton Cabassa, P.A., along with Chad A. Justice from Justice Litigation Associates. (*See* Doc. 119, p. 3). Those attorneys should remain class counsel. The proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel.

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See, e.g., Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011)("The view of the attorneys actively conducting the

12

litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives."). Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed, arm's-length, and at times contentious, negotiations between the Parties and their counsel.

Not only that, the Parties used a highly respected mediator in this case, Carlos J. Burruezo, one of the most respected mediators in Florida, whose involvement also supports finding the Settlement fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment ("[T]he involvement of a neutral or court- affiliated mediator … may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-

13

informed of the potential strengths (and weaknesses) of their positions, and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("[C]ourts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to the Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendant to pay $350,000 into a Settlement Fund to resolve the claims at issue. The gross payment is approximately $1,635 per Settlement Class Member, with a net amount of about $978 per Settlement Class Member.

This falls well within the range of reasonableness for settlement purposes in a WARN Act class action settlement. [*See, e.g., Molina v. Ace Homecare LLC,* No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments); *see also Philips v. Munchery Inc.,* No. 19-CV-00469-JSC, 2021 WL 326924, at *2 (N.D. Cal. Feb. 1, 2021) (approving class action settlement in which WARN Act class members received $831 net payments). Accordingly, the negotiated relief in this case is more than adequate, and should be approved.] For example, recently in a case styled *In re The Hertz Corporation, et al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member that was less than what is proposed here. As a second example, in the *Benson v. Enterprise* matter, class members received $734.58 before taxes. *See also, Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments). Thus, the recovery in this case of $978 falls well within the range of reasonableness for settlement purposes.

Similar to this case, the *Hertz* and *Benson* WARN Act matters also revolved around mass layoffs engaged in by rental car companies around the time COVID-19 began. Also, as in *Hertz* and *Benson,* the two core defenses in this litigation involved the natural disaster exception and the unforeseeable business circumstance defense to the WARN Act's notice provision.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive, and likely would have led to an appeal. The risk of the Named Plaintiff being unable to establish liability was also present because of numerous defenses asserted by Defendant, which may have resolved the case on summary judgment or trial. Each of these remaining phases of the litigation posed serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, the *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Class Members can quickly realize a portion of their possible damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant limits its exposure to less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation. The Named Plaintiff also supports the Settlement, as do the Class Members— evidenced by the lack of objections.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically, which also cuts in favor of final approval of the Parties' class action settlement.

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant likely would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992). By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal. Thus, the remaining *Bennett* factors are satisfied here.

### E. The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 118-2, the Settlement Agreement for which they seek final approval. Similarly,

17

Fed.R.Civ.P. 23(e)(4) is satisfied by the 60-day notice period during which class members were given sufficient time to be excluded and/or object.

And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied here because, in fact, to date there have been no objections to the Settlement made. Thus, each of these factors also weighs in favor of the Court granting final approval of the Parties' class action settlement.

## IV.     CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does <u>not</u> oppose the relief requested herein.

Dated this 7th day of March, 2023.

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

**Chad A. Justice**
Florida Bar No. 121559
chad@getjusticeforjustice.com
**JUSTICE FOR JUSTICE LLC**
1205 North Franklin Street
Suite 326
Tampa, Florida 33602
Telephone: (813) 566-0550

***Counsel for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**